# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **RICKY A. DOTSON, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **Case No. 4:14CV685NCC** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Ricky A. Dotson, Jr., (Plaintiff) for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401 et seq., and for Supplemental Security Income (SSI), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq. Plaintiff has filed a brief in support of the Complaint. (Doc. 19). Defendant has filed a brief in support of the Answer. (Doc. 24). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). (Doc. 9).

# I.
## PROCEDURAL HISTORY

On June 1, 2012, Plaintiff filed his application for DIB, and, on June 13, 2012, he filed his application for SSI. (Tr. 168-83). Plaintiff alleged a disability onset date of May 21, 2012. Plaintiff's applications were denied, and he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 23-25, 98-117, 126-27). After a hearing, by decision, dated March 29, 2013, the ALJ found Plaintiff not disabled. (Tr. 10-18). On March 4, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. 1-4). As such, the ALJ's decision stands as the final decision of the Commissioner.

# II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social

Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. See id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity (RFC). See Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ

will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. See Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. See Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is

enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> The concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. See Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. See Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228

F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. See Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. See Krogmeier, 294 F.3d at 1022. See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). "While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322.

The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. See id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. See Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. See Guilliams, 393 F.3d at 801; Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. See

id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. See Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. See Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work. See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert (VE) may be used. An ALJ posing a hypothetical to a VE is not required to

include all of a plaintiff's limitations, but only those which he finds credible.  See Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180.  Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons.  See Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

## III.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled.  See Onstead, 962 F.2d at 804.  Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. See Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff, who was forty-years old at the time of the hearing, testified that he was six feet tall and weighed 310 pounds; when he worked and did not have problems; he weighed 280 pounds; he could read at the fourth grade level and write "not so well"; he received a certificate indicating that he completed an auto body class; and he stopped working, on May 21, 2012, because he could not

breathe, his legged was "swelled up," and he could not go to work. (Tr. 35, 39, 42).

The ALJ found that Plaintiff met the insured requirements through December 31, 2014; he had not engaged in substantial gainful activity since May 21, 2012; Plaintiff had the severe impairment of obesity; and Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. The ALJ further found that Plaintiff had the RFC to perform light work except that he could tolerate no more than moderate exposure to cold and hot temperatures and respiratory irritants. Finally, the ALJ found that Plaintiff could not perform any past relevant work; that there was work in the national economy, existing in significant numbers, which a person of Plaintiff's age and with his work experience, education, and RFC could perform; and that, therefore, Plaintiff was not disabled.

Plaintiff contends the ALJ's decision is not supported by substantial evidence because the ALJ gave improper weight to the opinion of Joseph Gaeta, M.D., a medical expert who testified at the hearing, because the ALJ failed to consider Plaintiff's obesity, and because the hypothetical, which the ALJ posed to the VE, did not reflect Plaintiff's RFC. (Doc. 19). For the following reasons, the court finds that the ALJ's determination that Plaintiff was not disabled is based on substantial evidence.

## A.    Plaintiff's Credibility:

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues, including Plaintiff's RFC. <u>See</u> <u>Wildman v. Astrue</u>, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing <u>Tellez v. Barnhart</u>, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010).  As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ.  <u>See</u> <u>Guilliams v. Barnhart</u>, 393 F.3d 798, 801 (8th Cir. 2005); <u>Hutsell</u>, 892 F.2d at 750; <u>Benskin</u>, 830 F.2d at 882.

To the extent that the ALJ did not specifically cite <u>Polaski</u>, other case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence.  <u>Randolph v. Barnhart</u>, 386 F.3d 835, 842 (8th Cir. 2004); <u>Wheeler v. Apfel</u>, 224 F.3d 891, 895 n.3 (8th Cir. 2000); <u>Reynolds v. Chater</u>, 82 F.3d 254, 258 (8th Cir. 1996); <u>Montgomery v. Chater</u>, 69 F.3d 273, 275 (8th Cir. 1995).  Additionally, an ALJ need not methodically discuss each <u>Polaski</u> factor if the factors are acknowledged and examined prior to making a credibility

determination; where adequately explained and supported, credibility findings are for the ALJ to make.  See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000).  See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996).

In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001).  "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003).  See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006).  For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered that Plaintiff's subjective allegations were inconsistent with the objective medical evidence.  (Tr. 14-17).  The objective medical evidence, or lack thereof, is an important factor to consider in determining credibility.  See 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (objective medical evidence is a useful indicator in making reasonable conclusions about the intensity

and persistence of a claimant's symptoms and the effect those symptoms may have on a claimant's ability to work); Gonzales v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006) (ALJ may find claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary). In particular, the ALJ acknowledged that Plaintiff experienced some limitations from his physical problems, including his obesity, heart condition, breathing problems, and leg swelling, but ultimately determined that the medical evidence did not corroborate the severity of Plaintiff's alleged symptoms. (Tr. 12-17).

Indeed, the objective medical evidence reflects that Plaintiff had a history of heart problems, including congestive heart failure and cardiomyopathy. (Tr. 319-20, 355). In particular, regarding Plaintiff's heart problems, records reflect that a May 21, 2012 view of Plaintiff's chest showed "[c]hanges of mild to moderate congestive heart failure," a "moderate degree of cardiac enlargement," and the "possibility of superimposed basilar infiltrates." (Tr. 358). On May 22, 2012, John B. Baird, M.D., reported that Plaintiff had "[m]oderate left ventricular enlargement," severe global LV systolic "dysfunction, mild to moderate atrial enlargement, mild right ventricular dilation with severe systolic dysfunction, mild right atrial dilation, and mild "mitral regurgitation," and that Plaintiff's "[m]easured biplane" left ventricular ejection fraction was 27%. (Tr. 354). Indeed, a May 22, 2012 echocardiogram (EKG) indicated that Plaintiff had a left

ventricular ejection fraction of 27%, and a May 25, 2012 right and left catheterization and coronary angiography demonstrated an estimated ejection fraction of less than 20%. (Tr. 319). See http://www.mayoclinic.com/health/ejection-fraction/AN00360 (last visited Dec. 17, 2013) ("The left ventricle is the heart's main pumping chamber, so ejection fraction is usually measured only in the left ventricle (LV). An LV ejection fraction of 55 percent or higher is considered normal. An LV ejection fraction of 50 percent or lower is considered reduced. Experts vary in their opinion about an ejection fraction between 50 and 55 percent, and some would consider this a 'borderline' range.").

On June 7, 2012, Dr. Baird noted that Plaintiff's ejection fraction was "25-29%" when he was in the hospital; Plaintiff had a "cardiac cath" while in the hospital "with minimal irregularities [and] no significant disease"; and, "[d]ue to job requirements, work[ing] in very hot environment, [Plaintiff] [was] applying for SS disability." Dr. Baird reported that examination of Plaintiff's cardiac system showed "S1 normal, S2 normal, no murmurs, no gallops," and that Plaintiff's neurological system showed no gross motor or sensory deficits. (Tr. 355-57).

On June 14, 2012, it was reported that Plaintiff had improved and was doing well. (Tr. 359). On June 22, 2012, Dr. Baird reported that Plaintiff was "stabilized; he had no reoccurrence of "A-fib" (atrial fibrillation) which he had

while in the hospital; and he had *regular rhythm, "no reoccurrence," and "no significant disease*." (Tr. 357). On July 27, 2012, when Plaintiff was seen by Dr. Baird for follow up of his atrial fibrillation, cardiomyopathy idiopathic, congestive heart failure, hypertension, and obesity, Dr. Baird reported that Plaintiff's EKG showed *normal sinus rhythm*. On examination, Plaintiff had *no lower extremity edema, no spinal abnormalities, and no gross motor or sensory deficits*. (Tr. 365-67).

An August 20, 2012 EKG report noted normal left ventricular size and systolic function without regional wall motion abnormalities, a "*LVEF [of] 57%*," normal size aortic root, and mildly dilated ascending aorta. Review of Plaintiff's *cardiac system was normal*, with no murmurs or gallops. (Tr. 368-69) (emphasis added). Dr. Baird reported, on November 26, 2012, that Plaintiff's last EKG showed "sinus tachycardia, rate 122 bpm," normal intervals, "normal ST segments" and "T-waves," and "[a]bnormal R-wave in the precordial leads." It was noted, on this date, that Plaintiff's cardiomyopathy had "*great[ly]" improved* in "LV systolic function [], amazingly, with his last [EKG] showing *the ejection fraction in the 50%*." (Tr. 370) (emphasis added). Also, on this date, Plaintiff was noted to have "little shortness of breath," no chest pain or discomforts, some dyspnea on exertion, and no murmurs or gallops. On examination, Plaintiff's cardiac system showed "S1 normal, S2 normal, no murmurs, no gallops," and his

neurological system showed no gross motor or sensory deficits. (Tr. 370). An EKG performed, on November 26, 2012, showed normal left ventricle size and systolic function, without regional wall motion abnormalities, a "*LVEF [of] 53%*"; all chambers were normal in size and systolic function; and there was mild diastolic function, and a "minimally enlarged aortic root. (Tr. 373) (emphasis added). On February 13, 2013, Plaintiff's diagnosis was congestive heart failure, peripheral edema, and weight gain (Tr. 378), and, on February 20, 2013, he was diagnosed with congestive heart failure and cardiomyopathy (Tr. 379). Significantly, Joseph Gaeta, M.D., a board certified cardiologist, testified at the hearing that Plaintiff's ejection fraction, since August 2012, was normal and did not support Plaintiff's claim of a disabling heart condition. (Tr. 76-78).

The ALJ also considered Plaintiff's alleged leg problems, including that medical records showed that Plaintiff experienced some swelling in his legs. The ALJ noted, however, that the medical records also reflected that Plaintiff's swelling was only moderate and that it improved with treatment. (Tr. 15). The ALJ also noted that Plaintiff's medical records showed minimal swelling in his lower extremities, no gross or motor sensory deficits, no tenderness, and the ability to move all extremities "well." (Tr. 15). In particular, on examination, in June 2012, Plaintiff had "no lower extremity edema" and no "gross motor or sensory deficits." (Tr. 357). In July 2012, Plaintiff reported that "fluid [was] staying off

nicely" and he had no complaints of pedal edema. (Tr. 365, 367). On examination, in July 2012, it was noted that Plaintiff had no lower extremity edema, and no gross motor or sensory deficits. (Tr. 365, 367). In November 2012, Plaintiff reported having "some occasional lower extremity edema." (Tr. 370, 372). On examination in November 2012, Plaintiff had no lower extremity edema and no gross motor or sensory deficits. (Tr. 370, 372). On February 13, 2013, when Plaintiff presented due to swelling in his legs, it was noted that Plaintiff had leg swelling since May 2012; that it "got better but returned"; and that his current swelling was "moderate." (Tr. 378).

The ALJ further considered that Plaintiff received treatment for shortness of breath. (Tr. 15). The court notes that, in June 2012, Plaintiff denied dyspnea, and his chest was clear to auscultation. (Tr. 355-57). On examination in November 2012, dyspnea on exertion was noted. (Tr. 370-71). The court finds, therefore, that the ALJ's determination that Plaintiff's subjective allegations were inconsistent with the objective medical evidence is based on substantial evidence.

Second, the ALJ considered Plaintiff's daily activities. While the undersigned appreciates that a claimant need not be bedridden before he can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with his subjective complaints of a disabling impairment and may be considered in judging the credibility of his complaints. See Eichelberger, 390 F.3d

at 590 (ALJ properly considered that plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992); Benskin, 830 F.2d at 883; Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987). Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001). "Inconsistencies between [a claimant's] subjective complaints and [his] activities diminish [his] credibility." Goff, 421 F.3d at 792. See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen v. Chater, 75 F.3d 429, 439-41 (8th Cir. 1996) (holding that a claimant's daily activities, including visiting neighbors, cooking, doing laundry, and attending church, were incompatible with disabling pain and affirming denial of benefits at the second step of analysis).

In particular, the ALJ considered that Plaintiff testified, at the hearing, that he cooked, washed laundry and dishes, and went fishing. The ALJ also considered that Plaintiff stated, in a Function Report – Adult, that he went grocery shopping; that he was able to pay bills, count change, handle a savings account, and use a checkbook; that he visited with friends who came to his house; that he did not have problems getting along with family, friends, and neighbors; that he got along "ok"

with authority figures, such as bosses; and that he was able to follow spoken instructions "pretty well." (Tr. 16, 263-70). As such, the court finds that the ALJ properly considered Plaintiff's daily activities and that the ALJ's decision, in this regard, is based on substantial evidence.

Third, the court notes that Plaintiff improved with medication. In particular, when he was hospitalized, in May 2012, for congestive heart failure, it was reported that Plaintiff "dirures[ed] well with [a] 28-pound weight loss with IV Lasix." (Tr. 319). Further, Dr. Baird noted that Plaintiff's ejection fraction had reached 57% by August 2012. (Tr. 368). Conditions which can be controlled by treatment are not disabling. See Renstrom v. Astrue, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010)); Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling).

Fourth, the court notes that there were inconsistencies between Plaintiff's allegations of disabling pain and what he actually told health care providers. Eichelberger, 290 F.3d at 589 ("[A]n ALJ may disbelieve a claimant's subjective reports of pain because of inconsistencies or other circumstances."). In this regard, in July 2012, Plaintiff reported that "fluid [was] staying off nicely" and he had no complaints of pedal edema. Plaintiff also reported feeling better and that he was

"less short of breath." (Tr. 365, 367). In July 2012, Plaintiff told Dr. Baird that he was feeling better and that he had no complaints of "any significant chest pain." (Tr. 365-67). In August 2012, Plaintiff reported that he was "actually feeling pretty well overall." (Tr. 370). In November 2012, Plaintiff reported having "some occasional lower extremity edema," and "a little shortness of breath at times," and that he was "actually feeling pretty well overall." (Tr. 370-72). In conclusion, the court finds that the ALJ's credibility determination, in its entirety, is based on substantial evidence.

**B.    Dr. Gaeta's Testimony and Opinion:**

Dr. Gaeta testified, at the March 13, 2013 hearing, that he is a board-certified cardiologist; he never treated Plaintiff; and he reviewed exhibits which the Commissioner sent him, which exhibits included Plaintiff's records from May 21, 2012, through November 22, 2012. The ALJ then proceeded to read to Dr. Gaeta from a February 27, 2013 Physician's Assessment for Social Security Disability Claim (the Assessment), prepared by Dr. Baird, in which Dr. Baird opined, among other things, that Plaintiff was incapable of even low-stress work; that Plaintiff could not work or stay functioning greater than 20% of the day; that he could not "lift 10 pounds more than rarely"; that he had to avoid all exposure to extreme cold, heat, humidity, wetness, stairs, cigarette smoke, solvents, cleaners, fumes,

odors, gases, dust and chemicals; and that he would miss work more than three times a month.

The court notes that Dr. Baird additionally stated, in the Assessment, that he had treated Plaintiff every four months for "cardiology"; that Plaintiff's prognosis was "severe"; that his clinical findings included shortness of breath, "palpatations," chest pain, and "ECHOEF 25%"; that Plaintiff's symptoms included chest pain, shortness of breath, weakness, palpitations, "angina equivalent pain," fatigue, and dizziness; that Plaintiff had "marked limitations of physical activity"; that stress played a significant role in Plaintiff's symptoms; that Plaintiff was incapable of even "low stress" jobs; that Plaintiff experienced cardiac symptoms severe enough to interfere with the attention and concentration needed to perform even simple work tasks; that Plaintiff's impairments could be expected to last at least twelve months; that he could walk one block without resting; that he could sit or stand/walk less than 2 hours in an 8-hour work day; that Plaintiff would need to take unscheduled breaks every hour in an 8-hour work day; that these breaks would have to last 10 minutes; that, with prolonged sitting, Plaintiff's legs would have to be elevated; that Plaintiff would have to elevate his legs four times a day; that Plaintiff could rarely lift and carry ten pounds and never more than ten pounds; that he could rarely twist, stoop, or crouch and never climb ladders or stairs; that he should avoid exposure to extreme cold and heat, high humidity, wetness, cigarette

smoke, solvents, fumes, dusts, and chemicals; that he would have to be absent from work more than three times a month; that Plaintiff's limitations were due his medical condition; and that, as of the date Dr. Baird completed the Assessment, February 27, 2013, Plaintiff had the symptoms and limitations Dr. Baird described in the Assessment. (Tr. 375-77).

The ALJ also read from a Southwest Medical Associates treatment note, which reflected that Plaintiff was treated on February 13, 2013; that his chief complaint, on that date, was leg swelling; that Plaintiff's weight was 320 pounds; that his blood pressure was 134/80[1]; that the assessment was congestive heart failure, peripheral edema, and weight gain; and that the plan was to increase Lasix. (Tr. 72-74, 375-79).

Dr. Gaeta then testified that Plaintiff should avoid extremes of temperatures, dust, or fumes; that Plaintiff could have some exposure to these things; that Plaintiff's early ejection fraction of 25% met the Listing; that, as stated above, Plaintiff improved "significantly" after May 2012, according to his EKG and the record; that Plaintiff's more recent EKG was normal; that it was likely that the

---

[1] http://www.mayoclinic.or/diseases-conditions/high-blood-presure/in-depth/blood-presure/ART-20050982 (last accessed 02/27/2014) (systolic (top number) below 120 and diastolic (bottom number) below 80 is normal blood pressure; 120-139 over 80-89 is prehypertension; 140-159 over 90-99 is stage 1 hypertension; 160 or more over 100 or more is stage 2 hypertension; adopting a healthy lifestyle is recommended for prehypertension).

swelling in Plaintiff's legs was related to Plaintiff's weight rather than to heart failure because peripheral edema is "usually a late manifestation of heart failure"; that, when there is a late manifestation and he sees peripheral edema, Dr. Gaeta recommends that patients "elevate their legs"; that patients with late manifestation heart failure usually respond well to diuretics, like Plaintiff was taking; that "due to mechanical factors, like weight, diuretics do not work very well"; and that when diuretics do not work well, Dr. Gaeta recommends elevation, but most of all a patient would need weight loss.

Dr. Gaeta also testified that Plaintiff had, in fact, been diagnosed with congestive heart failure and cardiomyopathy, but that Plaintiff's medical records showed that his heart condition had improved significantly and was not as severe as alleged, based on EKG results. Specifically, Dr. Gaeta testified that Plaintiff's November 2012 ejection fraction of 53% was normal. Dr. Gaeta concluded that Plaintiff could perform light exertional work but should avoid more than moderate exposure to cold and hot temperatures and respiratory irritants. (Tr. 72-88).

The ALJ held that he afforded great weight to Dr. Gaeta's opinion that Plaintiff could perform light work with environmental restrictions of not more than moderate exposure to cold and hot temperatures and respiratory irritants. (Tr. 15). Plaintiff argues that the ALJ gave improper weight to Dr. Gaeta's opinion; that the ALJ should not have relied upon Dr. Gaeta's opinion because Dr. Gaeta did not

have two exhibits for review when he testified; that the ALJ failed to incorporate Dr. Gaeta's opinion that Plaintiff would have to elevate his legs throughout the day; and that the ALJ should have incorporated Dr. Gaeta's opinion that Plaintiff had congestive heart failure and cardiomyopathy in making his step two finding regarding Plaintiff's severe impairments. (Doc. 19 at 11).

First, the court notes that, pursuant to the Regulations and case law, even though Dr. Gaeta was a non-treating physician, the ALJ properly considered Dr. Gaeta's opinion. See 20 C.F.R. §§ 404.1527(e)(2)(iii), 416.927(e)(2)(iii); Hacker v. Barnhart, 459 F.3d 934, 939 (8th Cir. 2006)("[t]he regulations specifically provide that the opinions of non-treating physicians may be considered.").

Second, consistent with the Regulations and case law, the ALJ determined that Dr. Gaeta's opinion was entitled to great weight because he is a specialist in the relevant field of cardiology. (Tr. 15). 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5); Brown v. Astrue, 611 F.3d 941, 953 (8th Cir. 2010); Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998) ("The Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than the opinion of a source who is not a specialist.").

Third, the ALJ stated that he afforded Dr. Gaeta's opinion great weight because it was consistent with and supported by the evidence. (Tr. 15). Notably, as discussed above in regard to Plaintiff's credibility, after treatment, Plaintiff

improved and had normal ejection fractions, and it was reported that he had little shortness of breath, was feeling better and had no gross motor or sensory deficits. (Tr. 355-57, 359, 370). Indeed, a physician's opinion is afforded controlling weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence" of record. Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009)

Fourth, to the extent Plaintiff contends that Dr. Gaeta's opinion was flawed because it did not include a review of the entirety of Dr. Baird's opinion, the ALJ did not blindly adopt Dr. Gaeta's opinion. Rather, upon determining Plaintiff's RFC the ALJ considered all the evidence of record, including Dr. Baird's opinion as expressed the February 2013 Assessment. Upon doing so, the ALJ was fulfilling his role to consider all the evidence of record and then determine the weight to be given the various medical opinions of record. See Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000). See also Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007) ("If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight."). While Dr. Baird was a treating physician, his opinion did not automatically control or obviate the need to evaluate the record as a whole. See Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007); Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001).

Fifth, Plaintiff misconstrues Dr. Gaeta's testimony upon suggesting that Dr. Gaeta opined that Plaintiff needed to elevate his legs most of the day. Rather, as discussed above, Dr. Gaeta was responding to a hypothetical question when he testified that, if a patient had lower extremity swelling as a late manifestation of heart failure, he would recommend the patient elevate his legs. Dr. Gaeta opined, however, that, to the extent Plaintiff had peripheral edema, it was likely due to his weight. (Tr. 86). Moreover, Dr. Gaeta further opined that Plaintiff's records did not indicate that edema was "a significant problem." Only if he had a lot of swelling, would Plaintiff have to elevate his legs at work. Even if he had such swelling, which he did not have, Dr. Gaeta opined that there were other things Plaintiff could do, such as use stockings. (Tr. 88). Thus, Dr. Gaeta did not opine that Plaintiff needed to elevate his legs; and, taken in context of Dr. Gaeta's testimony, he did not opine that Plaintiff would have to elevate his feet throughout the workday. As such, there is no merit to Plaintiff's argument that the ALJ failed to account for Dr. Gaeta's testimony that Plaintiff would have to elevate his legs.

Sixth, although Plaintiff argues the ALJ should have found that Plaintiff's heart condition was severe based on Dr. Gaeta's testimony, Dr. Gaeta's testimony that Plaintiff had heart problems does not establish disability; Plaintiff was required to prove the severity of his diagnosed conditions. "The severity Regulation adopts a standard for determining the threshold level of severity: the

impairment must be one that 'significantly limits your physical or mental ability to do basic work activities.'" Bowen v. Yuckert, 482 U.S. 137, 153 n.11 (1987) (quoting 20 CFR § 404.1520(c)). A severe impairment is an impairment or combination of impairments that significantly limits a claimant's physical or mental ability to perform basic work activities without regard to age, education, or work experience. See 20 C.F.R. §§ 404.1520(c), 404.1521(a). However, "[a]n impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007); see also 20 C.F.R. § 404.1521(a) (describing basic work activities). In other words, if the impairment has only a minimal effect on the claimant's ability to work, then it is not severe. See Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007). A plaintiff has the burden of establishing a severe impairment. See Kirby, 500 F.3d at 707. The ALJ, in the instant matter, considered that Plaintiff had a heart condition, but concluded based on the evidence of record, that it did not significantly limit his physical ability to do basic work activities. (Tr. 14-16). Most significantly, as discussed above, Plaintiff's heart condition improved, as evidenced by his post-hospitalization examinations and normal ejection fractions. Thus, the court finds that Plaintiff's argument that the ALJ should have found his heart condition severe is without merit. In conclusion, the court finds that the ALJ gave proper weight to

Dr. Gaeta's opinion, and that the ALJ's decision, in that regard, is based on substantial evidence and consistent with the Regulations and case law.

## C.    Dr. Baird's Opinion:

The ALJ stated that he afforded Dr. Baird's opinion little weight because his records and opinion were relevant to Plaintiff's condition from May 2012 through August 20, 2012, but not from that latter date to the date of the hearing, as in the Assessment, Dr. Baird cited evidence created prior to August 20, 2012. The ALJ also stated that Dr. Baird's opinion was afforded little weight because his opinion was contradicted by the record as a whole. (Tr. 16). Plaintiff's Brief is not clear as to whether he intended to take issue with the weight the ALJ gave to Dr. Baird's opinion, but, nonetheless, the court has considered whether the ALJ gave proper weight to Dr. Baird's opinion and finds that the ALJ's decision to give Dr. Baird's opinion little weight is based on substantial evidence.

First, to the extent Dr. Baird indicated Plaintiff was unable to work, such a decision is properly made by the ALJ. See Ward v. Heckler, 786 F.2d 844, 846 (8th Cir. 1986) (per curiam) ("Even statements made by a claimant's treating physician regarding the existence of a disability have been held to be properly discounted in favor of the contrary medical opinion of a consulting physician where the treating physician's statements were conclusory in nature."); Thomas v. Sullivan, 928 F.2d 255, 259 (8th Cir. 1991)); King v. Heckler, 742 F.2d 968, 973

(6th Cir. 1984) (holding that the ALJ is not bound by conclusory statements of total disability by a treating physician where the ALJ has identified good reason for not accepting the treating physician's opinion, such as its not being supported by any detailed, clinical, or diagnostic evidence).

Second, to the extent Dr. Baird indicated Plaintiff was unable to work by making checkmarks on the Assessment form, a treating physician's checkmarks on a form are conclusory opinions which can be discounted if contradicted by other objective medical evidence.  See Stormo v. Barnhart, 377 F.3d 801, 805-06 (8th Cir. 2004); Hogan, 239 F.3d at 961; Social Security Regulation (SSR) 96-2p, 1996 WL 374188 (July 2, 1996).

Third, as stated by the ALJ, Dr. Baird's conclusions, as expressed in the Assessment, are inconsistent with the objective medical evidence, including tests which demonstrated Plaintiff had a normal ejection fraction, after treatment.  See Renstrom v. Astrue, 680 F.3d 1057, 1064-65 (8th Cir. 2012) (affirming where ALJ did not give controlling weight to opinion of treating doctor, where doctor's opinion was "largely based on [claimant's] subjective complaints" and where treating doctor's opinion was not consistent with other medical experts who determined claimant could perform light work with a modified RFC).

Fourth, Dr. Baird's opinion was inconsistent with his own records, in particular, Dr. Baird's reporting, on June 14, 2014, that Plaintiff had improved and

was doing well, his reporting, on June 22, 2013, that Plaintiff had no significant disease, and his reporting in August 2012, that Plaintiff made "amazing" improvement when his ejection fraction was up to 56%, and his frequently reporting that examination of Plaintiff's "cardiac" showed "S1 normal, S2 normal, no murmurs, no gallops" and that neurological examination showed no gross motor or sensory deficits.  (Tr. 357, 359, 367, 372).  See Davidson v. Astrue, 578 F.3d 838, 842 (8th Cir. 2009) ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes.").  In conclusion, the court finds that the ALJ gave proper weight to Dr. Baird's opinion and that the ALJ's decision, in this regard, is based on substantial evidence and consistent with the Regulations and case law.

**D.      Plaintiff's Obesity:**

As stated above, the ALJ found that Plaintiff's only severe impairment was obesity.  Plaintiff argues that the ALJ failed to fully consider the impact of Plaintiff's obesity on his ability to work, as required by SSR 02-01p, 2000 WL 628049 (Sept. 12, 2002).  Specifically, Plaintiff argues the ALJ should have included restrictions, in his RFC determination, in regard to Plaintiff's exposure to heat and other non-exertional limitations and included restrictions addressing Plaintiff's inability to stand for long periods of time.  (Doc. 19 at 12-13).

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.00(Q), states:

Effects of obesity. Obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

SSR 02-01p, 2000 WL 628049, at *2-5, states, in relevant part, that:

Obesity is a complex, chronic disease characterized by excessive accumulation of body fat. Obesity is generally a combination of factors (e.g., genetic, environmental, and behavioral). . . . .

We will consider obesity in determining whether:

The individual has a medically determinable impairment. . . . .

The individual's impairment(s) is severe. . . .

The individual's impairment(s) meets or equals the requirements of a listed impairment in the listings. . . .

The individual's impairment(s) prevents him or her from doing past relevant work. . . .

If an individual has the medically determinable impairment obesity that is "severe" as described [above], we may find that the obesity medically equals a listing. . . . We may find in a title II claim, or an adult claim under title XVI, that the obesity results in a finding that the individual is disabled based on his or residual functional capacity (RFC), age, education, and past work experience. However, we will also consider the possibility of coexisting or related conditions, especially as the level of obesity increases. . . . There is no specific weight or BAI that equates with a "severe" or a "not severe" impairment. . . . Rather, we will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe. . . .

Because there is no listing for obesity, we will find that an individual with obesity may meet the requirements of a listing if he or she has another impairment that, by itself, "meets" the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing. For example, obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing.

Also, 20 C.F.R. Pt. 404, Subpart P, Appx. 1, § 1.00(Q), provides that:

Obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

As a preliminary matter, the court notes that Plaintiff did not list obesity as an impairment affecting his ability to work on his application for benefits or in his disability repot, nor did he address it at the administrative hearing. (Tr. 26-92, 216). The Eighth Circuit holds that it is significant that a claimant has failed to allege disability due to a particular condition. See Wall v. Astrue, 561 F.3d 1048, 1062 (8th Cir. 2009) (holding that because the claimant did not allege that she suffered from a severe mental impairment, the "ALJ's failure to discuss listing 12.05C [was], therefore unsurprising"); Dunahoo, 241 F.3d at 1039 (holding that

the fact that the claimant did not allege depression on his benefits application was significant even though evidence of depression was later developed).

Upon concluding that Plaintiff was not disabled, the ALJ did not dispute Plaintiff's allegation that he was obese, as he found that Plaintiff's obesity was severe. The ALJ considered all Plaintiff's symptoms and medical records in light of his obesity, and concluded that the combination of his impairments did not meet the requirements of a listing. Further, when determining Plaintiff's RFC, the ALJ considered Plaintiff's obesity, in conjunction with other limitations which he found credible. He accounted for Plaintiff's obesity by limiting him to light work, which requires "standing or walking, *off and on*, for a total of approximately *6 hours of an 8-hour workday.*" SSR 83-10, 1983 WL 31251, at *6 (Dec. 12, 1983) (emphasis added). The ALJ also limited Plaintiff to moderate exposure to cold and hot temperatures and respiratory irritants. Thus, despite Plaintiff's assertion to the contrary, the ALJ did account for Plaintiff's inability to stand for long periods and his inability to have more than a moderate exposure to heat.

To the extent the ALJ did not include any additional limitations in Plaintiff's RFC, the ALJ was not required to include limitations beyond those he found credible. Cf. Tindell v. Barnhart, 444 F.3d 1002, 1007 (8th Cir. 2006) ("The ALJ included all of Tindell's credible limitations in his RFC assessment, and the ALJ's conclusions are supported by substantial evidence in the record."); SSR 96-8p,

1996 WL 374184, at *2 (July 2, 1996) ("It is incorrect to find that an individual has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain due to factors such as age or height, or whether the individual had ever engaged in certain activities in his or her past relevant work (e.g., lifting heavy weights.).").

The court finds, therefore, that the ALJ's consideration of Plaintiff's obesity is consistent with the Regulations and case law, and that it is based on substantial evidence.

## E.  Hypothetical to VE:

The Regulations define RFC as "what [the claimant] can do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Myers v. Colvin, 721 F.3d 521, 526 (8th Cir. 2013).

Upon making an RFC assessment, an ALJ must first identify a claimant's functional limitations or restrictions, and then assess his or her work-related abilities on a function-by-function basis. See Masterson, 363 F.3d at 737; Harris v. Barnhart, 356 F.3d 926, 929 (8th Cir. 2004). The RFC need only include a plaintiff's credible limitations. See Tindell v. Barnhart, 444 F.3d 1002, 1007 (8th Cir. 2006) ("The ALJ included all of Tindell's credible limitations in his RFC assessment, and the ALJ's conclusions are supported by substantial evidence in the record.").

In accordance with the above cited Regulations and case law, the ALJ, in the instant matter, considered the credibility of Plaintiff's allegations and all the evidence of record, including the medical evidence and Plaintiff's testimony. See Tucker, 363 F.3d at 783. Only after doing so did the ALJ determine Plaintiff had the RFC to perform light work except that he could not have more than moderate exposure to cold and hot temperatures and respiratory irritants. The court finds, therefore, that the ALJ's RFC determination is based on substantial evidence and consistent with the Regulations and case law.

The ALJ posed several hypotheticals to the VE, one of which mirrored the RFC which the ALJ assigned to Plaintiff, and which described a person of Plaintiff's age, education, and work experience. As part of this hypothetical, the ALJ stated that the hypothetical person would have to elevate his legs only during

break times.  (Tr. 90).  The VE testified that there were jobs existing in significant numbers in the national economy which the hypothetical person could perform. (Tr. 90).  An alternative hypothetical, which the ALJ posed to the VE, described a person who would have to elevate his legs three to four times a day.  The VE testified that there were no jobs which such a person could perform.  (Tr. 89-90).

In his decision, the ALJ noted that the VE testified that, if Plaintiff had to elevate his feet outside of the normal break times, he could not sustain any work. As stated above, however, the ALJ found that the evidence did not establish such a need was medically reasonable for Plaintiff.  (Tr. 15-16).  As such, the ALJ found that Plaintiff had the RFC to perform light work, with the environmental limitations discussed above.  The court has found that the ALJ's RFC determination is based on substantial evidence and consistent with the case law and Regulations.

Nonetheless, Plaintiff argues that the ALJ's determination that there are jobs which Plaintiff can perform is not based on substantial evidence because the ALJ's RFC determination does not mirror the hypothetical submitted to the VE.

First, the ALJ was only required to include in the hypothetical which he posed to the VE those limitations which he found credible; the ALJ did not find Plaintiff had to elevate his legs, either during the work day or during breaks.  Thus, the ALJ was not required to include such limitations in a hypothetical to the VE or

rely on the VE's response to such a hypothetical. See Renstrom v. Astrue, 680 F.3d 1057, 1067 (8th Cir. 2012); Martise v. Astrue, 641 F.3d 909, 927(8th Cir. 2011) ("The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole."); Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[T]he ALJ was not obligated to include limitations from opinions he properly disregarded."); Guilliams v. Barnhart, 393 F.3d 789, 804 (8th Cir. 2005) (holding that a proper hypothetical sets forth impairments supported by substantial evidence and accepted as true by the ALJ).

Second, because the VE testified that there were jobs existing in significant numbers for a person with Plaintiff's RFC, even if that person had to elevate his legs during breaks, it stands to reason that there would be jobs existing in significant numbers for the hypothetical person who did not have to lift his legs during breaks.

Third, the ALJ did not rely exclusively on the VE's testimony. Rather, the ALJ independently found that the environmental limitations he included in Plaintiff's RFC had "little or no effect on the occupational base of unskilled light work." (Tr. 17). Because Plaintiff could perform "substantially all of the exertional demands of work" at the light level, the ALJ reasoned that Medical-Vocational Guidelines (the Guidelines) could be used as a framework for

determining whether there was work which Plaintiff could perform. (Tr. 17). Indeed, if a claimant is found to have only exertional impairments, the Commissioner may meet her burden by referring to the Medical-Vocational Guidelines. See Robinson v. Sullivan, 956 F.2d 836, 839 (8th Cir. 1992). Significantly, "'an ALJ may use the Guidelines even though there is a nonexertional impairment if the ALJ finds, and the record supports the finding, that the nonexertional impairment does not diminish the claimant's residual functional capacity to perform the full range of activities listed in the Guidelines.'" Lucy v. Chater, 113 F.3d 905, 908 (8th Cir. 1997) (quoting Thompson v. Bowen, 850 F.2d 346, 349-50 (8th Cir. 1988)). See also Reynolds v. Chater, 82 F.3d 254, 258-59 (8th Cir. 1996) (when nonexertional limitations do not significantly affect a claimant's ability to work, an ALJ is not required to consult a VE and can properly rely on the Medical-Vocational Guidelines).

Fourth, 20 C.F.R. Part 404, Subpart P, App. 2, § 202(b) provides that the "functional capacity to perform the full range of light work represents substantial work capability compatible with making a work adjustment to substantial numbers of unskilled jobs, and thus, generally provides sufficient occupational mobility even for severely impaired individuals who are not of advanced age and have sufficient educational competences for unskilled work." According to the Regulations, Plaintiff, who was 40 years old at the time of the ALJ's decision, was

a "younger individual." 20 C.F.R. Part 404, Subpart P, App. 2, § 201(h)(1) ("[Y]ounger individual is used to denote an individual age 18 through 49"). Thus, given that the ALJ found that Plaintiff's environmental limitations did not significantly erode the occupational base, the ALJ's decision is based on substantial evidence.

Fifth, to the extent the ALJ's decision may not have clearly articulated the basis for his determination that there was work which Plaintiff could perform, a deficiency in the ALJ's opinion writing is not a sufficient reason for setting aside the Commissioner's "finding where the deficiency had no practical effect on the outcome of the case." Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999). "Consequently, the [alleged] deficiency does not require reversal since it had no bearing on the outcome" of Plaintiff's case. Id.

In conclusion, given that the court has found above that the ALJ's RFC determination is based on substantial evidence, the court further finds the ALJ's determination that there is work in the national economy which Plaintiff can perform is based on substantial evidence and consistent with the Regulations and case law. Additionally, the court finds without merit Plaintiff's arguments regarding the hypothetical posed to the VE and that the ALJ's decision, in this regard, is consistent with the Regulations and case law.

**IV.**
**CONCLUSION**

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in his Complaint and Brief in Support of Complaint (Docs. 1, 19) is **DENIED**;

**IT IS ORDERED** that a separate judgment be entered incorporating this Memorandum and Order.

Dated this 29th day of April 2015.

/s/ Noelle C. Collins
UNITED STATES MAGISTRATE JUDGE